MYERS, P.J.,
Dissenting:
¶ 26. On my review of the record, the trial court did not err in permitting the State to cross-examine Thomas regarding the details of his prior conviction. Thomas opened this door on direct examination, and he also made the shooting of his prior girlfriend an issue by claiming that the stabbing of his present girlfriend was accidental. Thomas’s other assignments of error are likewise without merit. Because I would affirm Thomas’s conviction and sentence, I respectfully dissent.
¶ 27. First, it is apparent from my review of the record that Thomas did open the door to questioning on the details of his prior conviction, although not through the dialogue analyzed by the majority. When Thomas took the stand, the jury knew that he had been previously convicted of aggravated assault; proof of his 1999 conviction was put on as part of the State’s case that Thomas was a convicted felon in possession of a weapon. Then, after Thomas elected to testify, defense counsel asked on direct examination, “Have you ever been charged or convicted of stabbing anybody?” Thomas denied that he had. This could only have been calculated to bolster Thomas’s character and address his prior aggravated assault conviction. Thomas therefore made the details of that conviction an issue, and he cannot now complain that the State brought out the truth on cross-examination.
¶ 28. Second, the trial court never held the details of Thomas’s prior conviction to be inadmissible. It is true that Thomas did, prior to trial, move to preclude the State from addressing the subject, citing Rule 404 of the Mississippi Rules of Evidence. However, the trial court did not grant the motion; instead, it reserved its ruling pending developments in the trial. Thomas never secured that ruling, and as a result the trial court did not expressly rule on the admissibility of the details of Thomas’s 1999 conviction.
¶ 29. This is important because the opinion of the majority is predicated on its assumption that the details of the conviction were otherwise inadmissible. Howev *136 er, that was not the holding of the trial court; when defense counsel objected to the State’s cross on the details of the prior conviction, the trial court overruled the objection.[1] Therefore, our analysis should be whether the trial court abused its discretion in finding the details of Thomas’s 1999 aggravated assault conviction admissible.
¶ 30. Certainly, as the majority argues, the details of the conviction would be inadmissible under Rule 404(b) “to prove the character of [Thomas] in order to show that he acted in conformity therewith.” Yet, Rule 404(b) provides that the same evidence may be admissible for other purposes, including to rebut the defendant’s claim of mistake or accident.
¶ 31. “Mistake or accident” is exactly what Thomas claimed happened. His testimony was that he grabbed Burks, who weighed ninety pounds and only had the use of one arm,[2] and attempted to disarm her.[3] In response, the victim “snatched” with her “strong arm,” overpowering Thomas, who was at least twice her size, and in that act she plunged the knife through her breastbone, inflicting a mortal wound.[4] On cross-examination, the State rebutted this claim of accident by questioning Thomas regarding the details of his prior conviction. In that case, Thomas pleaded guilty to aggravated assault, admitting that he had shot a previous girlfriend. This is not probative merely because it indicates a history of abusing girlfriends inconsistent with accident, but because it is apparent from the record that, before pleading guilty, Thomas had claimed that the shooting was an accident. Indeed, on the stand, Thomas returned to that story, asserting that the gun had simply “gone off.” Thus, there is no error here: the trial court did not find the details of Thomas’s prior conviction inadmissible, and even if the defense had pressed for a ruling on its motion, it should have been denied.
*137 ¶ 32. For the above reasons, I would affirm Thomas’s conviction and sentence. Therefore, I respectfully dissent.
ROBERTS, J., JOINS THIS SEPARATE OPINION.

. The defense did not specify grounds for the objection, nor did the trial court explain why it was overruled.

. Burks testified that she could not move her left arm as a result of an injury suffered twenty years prior.

. I feel that I should elaborate more fully on the circumstances of the incident. This was no mere “he said, she said.” Thomas’s story, taken at face value, is improbable. But it was also contradicted by the surrounding circumstances and compelling physical evidence: Thomas claims Burks inadvertently stabbed herself, but an attending physician stated that the primary wound required so much force that this was “extraordinarily unlikely”; he claims Burks was inadvertently stabbed once, but she was treated for two distinct stab wounds; he claims to have gently removed the knife, but blood was found "cast off” on the walls of her home, evidencing that the knife was removed as violently as it was thrust in; he claims to have unbuttoned her shirt after the incident to examine her wound and remove the knife, but the bloody shirt had no buttons (after being impeached with this evidence, Thomas testified that the victim must have changed into the bloody shirt before seeking help; defense counsel argued that the knife holes corresponding to her wounds must have been added later); he claims to have left to seek help, but could not find anyone (she, although grievously wounded, quickly secured assistance from a neighbor). The evidence was much more consistent with Burks’s version of the events: that Thomas stabbed her twice and fled, leaving her for dead.

.An attending physician testified that Burks’s injuries were so severe that she was not expected to survive. She estimated that Burks’s chances of survival were only about one in ten. Following the stabbing, Burks lost forty percent of her blood, and complications precluded an infusion for more than six hours. Emergency surgery then required that her body be opened from the chest to the abdomen, and post-operative care necessitated that the incision be left open for an extended period of time.